MONETTE W. COPE
(IL ARDC #6198913)
Weltman Weinberg & Reis, Co., L.P.A.
180 N. Lasalle Street, Suite 2400
Chicago, IL 60601
Phone: 312-253-9614 Fax: 312-782-4201
Email: mcope@weltman.com
Pro Hac Vice Attorney for Defendant-
Appellee
National Collegiate Student Loan Trust
2006-3

HOLLY J. NOLAN (CA SBN 140775)
Solomon Grindle Silverman and Spinella
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Phone: 858-793-8500 Fax: 858-793-8263
Email: hollyn@sgsslaw.com
Lead Attorney for Defendant-Appellee,
National Collegiate Student Loan Trust
2006-3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (District or BAP) | |
| In re:<br>Cesar Medina and Krystal Anne Medina,<br>      *Debtors*. | Case No. 20-CV-1912-BEN-MDD<br><br>Judge Roger T. Benitez<br>Magistrate Judge Mitchell D. Dembin |
| Krystal Anne Medina,<br>    *Plaintiff-Appellant,*<br>v.<br><br>National Collegiate Student Loan Trust 2006-3,<br>    *Defendant-Appellee.* | Bankruptcy No. 17-BK-05276-LT<br>Adversary No. 19-AP-90065-LT<br><br>**APPELLEE'S RESPONDING BRIEF** |

# <u>TABLE OF CASES, STATUTES AND</u>
# <u>OTHER AUTHORITY CITED CASES</u>

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United*......... 26
    *States*, 340 U.S. 593, 596, 71 S. Ct. 515, 518, 95 L. Ed. 566
    (1951)

*In re Abdelgadir*, 455 B.R. 896 (B.A.P. 9th Cir. 2011)........................ 33

*Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, ...…… 14
    559 B.R. 265 (Bankr. N.D. Ga. 2016)

*In re Conti*, 982 F.3d 445, 448 (6th Cir. 2020)................................. 37

*Decker v. EduCap, Inc.*, 476 B.R. 463, 467-468 (W.D. Pa. 2012)........... 13

*In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005)...................... 13

*In re Duits*, No. 14-05277-RLM-13, 2020 WL 256770, at *2................ 15
    (Bankr. S.D. Ind. Jan. 15, 2020)

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S. ….... 24
    Ct. 2589, 2594 (1992)

*Giannullo v. City of New York*, 322 F.3d 139, 143, n. 5 (2d Cir. 2003)….. 33

*In re Greer-Allen*, 602 B.R. 831, at 838 (Bankr. D. Mass. 2019)............ 13

*Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re* ........... 13,38
    *Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019)

*Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S.Ct. 654, 112............... 36
    L.Ed.2d 755 (1991)

*Grojean v. Comm'r,* 248 F.3d 572 (7th Cir. 2001)............................ 30

*Guillermety v. Sec'y of Educ. of U.S.*, 241 F. Supp. 2d 727 (E.D. ……..... 33
    Mich. 2002)

*In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D. Cal. 1989)…... *12, 13, 19, 29*

*Hemar Serv. Corp. of Am. Inc. v. Pilcher (In re Pilcher)*, 149 B.R. ……. *13*
   595, 600 (B.A.P. 9th Cir. 1993)

*In re Holguin*, 609 B.R. 878, 887 (Bankr. D.N.M. 2019)……………….. *15*

*In re Mata*, No. 6:13-BK-30625-MH, 2020 WL 5543716, at *6………... *31*
   (Bankr. C.D. Cal. July 31, 2020)

*In re McClain*, 272 B.R. 42, 46 (Bankr. D.N.H. 2002)………………… *15*

*In re McDaniel*, 973 F.3d 1083, 1092 (10th Cir. 2020)………………… *38*

*In re Merchant*, 958 F.2d 738 (6th Cir. 1992)…………………………… *13*

*In re Meyers*, 196 F.3d 622, 624 (6th Cir. 1999)……………………….. *37*

*Midwest Mobile Diagnostic Imaging, L.L.C. v. Dynamics Corp. of* …….. *32*
   *Am.*, 965 F. Supp. 1003, 1013 (W.D. Mich. 1997), *aff'd sub*
   *nom. Midwest Mobile Diagnostic Imaging v. Dynamics Corp.*
   *of Am.*, 165 F.3d 27 (6th Cir. 1998)

*O'Brien v. First Marblehead Educ. Res., Inc*………. *12, 13, 18, 19, 23, 24, 25*
   *(In re O'Brien)*, 419 F.3d 104 (2d Cir.
   N.Y. 2005)

*Plumbers Joint Apprenticeship & Journeyman Training Comm. v.* …….. *26*
   *Rosen (In re Rosen)*, 179 B.R. 935, at 938 (Bankr. D. Or. 1995)

*Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)…………………. *42*

*In re Rent-Rite SuperKegs W. Ltd.*, No. 19-CV-01552-RBJ, 2020……… *23*
   WL 6689166, at *4 (D. Colo. Aug. 12, 2020)

*Resident Councils of Washington v. Leavitt*, 500 F.3d 1025, 1031……… *26*
   (9th Cir. 2007)

*In re Roth*, 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013)...................... *37, 38*

*In re Stewart*, 592 B.R. 414 (B.A.P. 1st Cir. 2018), *vacated and*............ *30*
    remanded, 948 F.3d 509 (1st Cir. 2020)

*In re Taratuska*, No. 01-10361-RS, 2007 WL 2385955 (Bankr. D. ....... *12*
    Mass. Aug. 16, 2007), opinion revised and superseded, 374 B.R.
    24 (Bankr. D. Mass. 2007), rev'd, No. CIV.A. 07-11938-RCL,
    2008 WL 4826279 (D. Mass. Aug. 25, 2008)

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (U.S. .......... *37*
    2004)

*TI Fed. Credit Union v. Delbonis (In re Debonis)*, 183 B.R. 1, 3-4........ *40*
    (D. Mass. 1995)

*In re Tremblay*, No. BR 11-09732-MMB, 2012 WL 2915367.............. *33*
    (Bankr. S.D. Cal. July 16, 2012)

*United States v. Diwre*, 872 F.2d 431 (9th Cir. 1989)...................... *31*

*United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. .......... *24*
    1026, 1030 (1989)

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. At*....... *2*
    *Lakeridge,LLC*, 138 S. Ct. 960, 966, 200 L. Ed. 2d 218 (2018)

*In re Winick*, 610 B.R. 651, 657 (S.D. Cal. 2019)........................... *2*

*Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473........ *35*
    (1st Cir. 2005)

**STATUTES**

11 U.S.C. § 523(A)(8)(A)(i)...................... *1, 11, 12, 13, 14, 15, 17, 20,*
                              *21, 22, 23, 24, 32, 34, 35, 38*

11 U.S.C. § 523(A)(8)(A)(ii)................................................ *21*

# OTHER AUTHORITY

11 Williston on Contracts § 32:7 (4th ed.)………………………………….  *33*

https://www.merriam-webster.com/dictionary/fund (Last visited……………  *28*
    January 19, 2021)

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*….  *31*
    *Prot. Act of 1991*, 31 F.C.C. Rcd. 9074, 9082, n.54 (2016)

*National Banks and Federal Savings Associations as Lenders*, 85 FR.…...  *22*
    68742-01

# **TABLE OF CONTENTS**

**I.    STATEMENT OF THE CASE**……………………………………....1-2

**II.   STANDARD OF REVIEW**…………………………………...…2-3

**III.  STATEMENT OF FACTS**…………………………………......3-10

**IV.   ARGUMENT**………………………………………………...11-42

    **A.    THE BANKRUPTCY COURT'S FINDINGS AND**………11-20
        **DECISION ARE SOUND AND SHOULD BE**
        **AFFIRMED**

        1.    The Bankruptcy Court's Decision that TERI's……...…11-17
               Guaranty is Funding is Supported by a Canon of Case
               Law

        2.    The Bankruptcy Court Correctly Found that TERI…….17-19
               Was a Nonprofit Institution

        3.    The Bankruptcy Court's Finding that Medina's Loan is…..20
               Nondischargeable Under §523(a)(8)(A)(i) is Correct and
               Should be Affirmed

    **B.    MEDINA CANNOT AND DOES NOT POINT TO ANY**...20-39
        **ERROR AND INSTEAD ATTEMPTS TO MISLEAD**
        **THE COURT**

        1.    Medina's Application of Case Law is Flawed…………21-23

        2.    Medina's Account of The Legislative History of……...23-27
               §523(A)(8)(A)(I) is Flawed

        3.    Medina's Definition of the Word "Fund" is Flawed…...27-30

        4.    Medina's Construction of the Statute is Flawed……...30-36
               a.    "Fund" Includes "Guaranty"……………………30-31
               b.    The Statute and Law Look to the Loan at the…...31-34
                    Time it was Made to Determine the Intent of

the Parties

        c.      The Statute Does Not Require a Forensic.........34-36

               Examination of Nonprofits to Determine if

               they are Nonprofits Under the Statute

   5.     Medina Points to No Evidence that TERI Was Not.........36

       Operating as a Nonprofit

   6.     Medina's Statement of The Burden of Proof is ..........36-38

       Flawed

   7.     Red Herrings.................................................38-39

**C.    PARTIES MAY NOT RAISE NEW ISSUES OF FACT**....40-42

    **ON APPEAL**

**V.    CONCLUSION AND RELIEF REQUESTED**..........................42

# I.    STATEMENT OF THE CASE

Appellant-Plaintiff ("Medina") is challenging the nondischargeability of her student loan debt to Appellee-Defendant National Collegiate Student Loan Trust 2006-3 ("NCSLT") under 11 U.S.C. §523(a)(8)(A)(i) (the "Statute") which provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A) (i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a nonprofit institution.

The overall question presented to this court is whether or not the bankruptcy court's findings of facts support the legal conclusion that NCSLT's student loan was made under a program funded in whole or in part by a nonprofit institution, and so nondischargeable. The facts show that the Loan is nondischargeable under §523(a)(8)(A)(i)  because it was made under a program, and funded in whole or in part by a nonprofit institution.  Specifically, the Loan was made under the Education One Continuing Education Loan Program (the "Program"), and funded by the Guaranty of The Education Resources Institute, Inc. ("TERI,") a nonprofit institution.

The bankruptcy court's findings of facts are incontrovertible from the evidence in the record and logically lead to the conclusion that Medina's student

loan (the "Loan") is nondischargeable.  The decision is sound, supported by a canon of case law and should be affirmed.

## II.    STANDARD OF REVIEW

Appellant Medina misleads this Court on the proper standard of review and claims it is de novo.  Not true. Absent clear error, and Medina points to none, the bankruptcy court's findings of facts will stand.   Conclusions of law will be reviewed do novo.

The U.S. Supreme Court holds that a bankruptcy court's factual findings are "reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court."[1] When reviewing mixed questions of law and fact, the Supreme Court requires appellate courts to review a bankruptcy "decision with deference."[2]

"The district court must   accept   the bankruptcy court's factual   findings "unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge.""[3] This Court will review mixed questions of law and fact de novo, giving deference to the findings of facts and examining whether the facts satisfy the conclusions of law. "A mixed question of

---

[1] *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966, 200 L. Ed. 2d 218 (2018)
[2] *Id.*, at 967
[3] *In re Winick, 610 B.R. 651, 657 (S.D. Cal. 2019)*

2

law and fact occurs when the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule."[4]

Because there is no clear error, the bankruptcy court's Findings of Fact must be accepted by this Court. Those Findings of Fact entirely satisfy and support the conclusions of law the bankruptcy court made.

## III. STATEMENT OF FACTS

The bankruptcy court made the following Findings of Facts. See Findings of Facts and Conclusions of Law ("FFCL",) Doc. 83.[5]

1.     Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan") with JP Morgan Chase Bank N.A on or about June 12, 2006 to attend the San Diego Culinary Institute for the academic period of September 2006 through May 2007 in the principal amount of $33,149.17.[6]

2.     National Collegiate Student Loan Trust 2006-3, Defendant, is the current holder of the Loan.[7]

3.     The Loan is an educational loan.[8]

---

[4] *Id.* (cites omitted)

[5] When referring to a "Doc.," the referral is to the Document number in the bankruptcy case docket, Case No. 19-90065, Bankruptcy Court for the Southern District of California.

[6] See FFCL, Doc. 83, p. 3, ¶1.   See also Declaration of Bradley Luke ("Luke Declaration"), Doc. 64-1, ¶s 10 & 11 and its Exs. A and B; See also the Complaint, Doc. 1, Section II, FACTS, lines 6 & 7.

[7] See FFCL Doc. 83, p. 3, ¶2.   See also Luke Declaration, Doc. 64-1, ¶ 36.

4.     The loan package given to Plaintiff included Terms and Conditions of the Loan.[9]

5.     The terms and conditions of the Loan describe TERI as a "non-profit institution" and describe the Loan as nondischargeable in bankruptcy:

> I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply:  (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.  This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.[10]

6.     The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program.[11]

---

[8] See FFCL, Doc. 83, p. 3, ¶3.  See also Luke Declaration, Doc. 64-1, ¶s 10, 11 & 18 and its Exs. A and B. See also TERI Guaranty, Doc. 64-6, and its Ex. E, p. 26, Ex. A, Basic Program Design (Describing the Bank One Continuing Education Loan as a "fully credit-tested education loan.").

[9] See FFCL, Doc. 83, p. 3, ¶4.  See also Luke Declaration, Doc. 64-1, ¶ 20 and its Ex. B.

[10] See FFCL, Doc. 83, p. 3, ¶5.  See also Luke Declaration, Doc. 64-1, ¶ 21, and its Ex. B, ¶ L 12.  (Text is bolded in the Credit Agreement).

[11] See FFCL, Doc. 83, p. 4, ¶6.  See also Luke Declaration, Doc. 64-1, ¶ 19 and 28 and its Ex. B, p.3; See also the TERI Guaranty, Doc. 64-6, Ex. E and its Ex. A "Basic Program Design"; See also Deposit and Sale Agreement, Doc. 64-9, Ex. G, and its Schedule A.

7.    The Educational Resources Institute, Inc. ("TERI") guaranteed the loans in Plaintiff's Loan Program, the Education One© Education One Continuing Education Loan Program.[12]

8.    TERI guaranteed that it would reimburse the holder of any Program loan upon default.[13]

9.    TERI is a non-profit institution.[14]

a.    TERI is described as a nonprofit institution on the Secretary of the Commonwealth of Massachusetts's website at http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=o3fxJEn1qk52LvkEcwi30rXyq8ywfTWtfB4CHi.XP0c-. (The "Website".)[15]

---

[12] See FFCL, Doc. 83, p. 4, ¶7.   See also Luke Declaration, 64-1, ¶ 23 and See also TERI Guaranty, Doc. 64-6, Ex. E, Pgs. 1 - 3, Preamble & Sections 1.6 & 2.1; E, Ex. A, Sections, 1, 2, and "Basic Program Design;" See also Credit Agreement, Doc. 64-3, Ex. B, p. 3, upper left-hand corner & ¶ L.12.

[13] See FFCL, Doc. 83, p. 4, ¶8.   See also Luke Declaration, Doc. 64-1, ¶ 29; See also TERI Guaranty, Doc. 64-6, Ex. E, Sections 1.6 and 2.1.

[14] See FFCL, Doc. 83, pgs. 4 - 7, ¶s 9, 9.a – 9.l.   See also Luke Declaration, Doc. 64-1, ¶ 22, and See its Ex. B, ¶ L. 12; Ex. E, p. 1, ¶ 1; Ex. H p.5, ¶ 1; Ex. I, p. 1, ¶ 1. See Also Declaration of Holly Nolan ("Nolan Declaration), Doc. 64-14, and its Exs. A – E.

[15] See FFCL, Co. 83, p. 4, & Nolan Declaration, Doc. 64-14, ¶ 3.

b.     TERI's Articles of Organization state that it was organized under Mass. G.L. Ch. 180, the Massachusetts nonprofit statute, and it was to be "operated exclusively for charitable and educational purposes."[16]

c.     TERI's Articles of Organization state that: "[n]otwithstanding any other provisions of these articles, the Corporation shall not participate in activities not permitted to be carried on (a) by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1954, as amended (or the corresponding provision of any future United States internal revenue law), or (b) by a corporation contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1954, as amended (or the corresponding provision of any future United States internal revenue law."[17]

d.     TERI's Articles of Organization state that: "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except

---

[16] See FFCL, Co. 83, p. 4, & Nolan Declaration, Doc. 64-14, ¶s 6 & 7, and its Ex. A.

[17] See FFCL, Co. 83, p. 4, & Nolan Declaration, Doc. 64-14, at ¶8, and its Ex. A.

reasonable compensation for services rendered and distributions in furtherance of the purposes set forth in Article 2 hereof."[18]

e.      TERI amended its Articles of Organization on or about September 12, 1990 only to add a limitation on the personal liability of the Officers and Directors to the corporation for breach of fiduciary duty.[19]

f.      TERI restated its Articles of Organization on or about November 19, 2010 to provide: "The Corporation is organized and at all times shall be operated exclusively for religious, charitable, scientific, literary or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States internal revenue law (the Internal Revenue Code of 1986, as amended, and any such future law, the "Code"), and Section 4 of Chapter 180 of the Massachusetts General Laws, as amended ("Chapter 180"), including but not limited to assisting students in attaining an education and assisting educational and financial institutions in providing an education in an economical fashion."[20]

---

[18]See FFCL, Co. 83, p. 5, & Nolan Declaration, Doc. 64-14, at ¶9, and its Ex. A.
[19] See FFCL, Co. 83, p. 5, & Nolan Declaration, Doc. 64-14, at ¶10, and its Ex. B.
[20] See FFCL, Co. 83, p. 5, & Nolan Declaration, Doc. 64-14, at ¶s 11 &12, and its Ex. C, Sched. A, Art. II (2).

7

g.     The Restated Articles of Organization also provided that: "Notwithstanding any other provisions of these articles, the Corporation shall not participate in activities not permitted to be carried on (a) by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code or (b) by a corporation contributions to which are deductible by virtue of Section 170(c)(2) of the Code."[21]

h.     The Restated Articles of Organization further provided that: "No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except reasonable compensation for services rendered and distributions in furtherance if the purposes set forth in Article II hereof."[22]

i.     TERI merged with two other corporations during its corporate life, The Education Fund, Inc. and TERI Financial Services, Inc., Both of these corporations were nonprofit corporations and the mergers were done under Massachusetts' nonprofit statute, General Laws, Chapter 180. The second merger specifically states that TERI shall remain a nonprofit corporation:

---

[21] See FFCL, Co. 83, p. 5, & Nolan Declaration, Doc. 64-14, at ¶13, and its Ex. C, Sched. B, Art. IV-B
[22] See FFCL, Co. 83, p. 5, & Nolan Declaration, Doc. 64-14, at p. 5 ¶14, and its Ex. C, Sched. B, Art. IV.

"... [I]f any of the constituent corporations constitutes a public charity, then the resulting or surviving corporation shall be a public charity."[23]

j.      The Secretary of the Commonwealth of Massachusetts's website shows that TERI retained its nonprofit status throughout its corporate life and was never a for-profit corporation.[24]

k.      TERI filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Massachusetts, Case No. 08-12540 on April 7, 2008.[25]

      i.      TERI declared itself a nonprofit in its Equity Security Holder Statement.[26]

      ii.      TERI's Disclosure Statement identified it as a nonprofit with a mission to promote education and guarantee private student loans: "Founded in 1985, The Education Resources Institute, Inc. is a nonprofit organization incorporated under Massachusetts General Laws, chapter 180, local in Boston, Massachusetts. TERI promotes access to education for students of all ages and incomes with two

---

[23] See FFCL, Co. 83, p. 6, & Nolan Declaration, Doc. 64-14, at, ¶s 15-21, and its Exs. D & E.
[24] See FFCL, Co. 83, p. 6, & Nolan Declaration, Doc. 64-14, ¶ 22
[25] *Id.*, at ¶ 22.
[26] See FFCL, Co. 83, p. 6, & Doc. 66, Ex. L.

primary programs. Through its College Access programs, TERI assists low income, first-generation-to college and other underserved students in pursuing higher education. TERI is a nationally recognized leader in college access through support and promotion of research-based policies and practices. Locally it provides innovative direct service programs in Massachusetts. Through its loan guarantee programs, TERI has guaranteed more than two million private student loans."[27]

iii.     The findings of fact and conclusions of law in the Order confirming TERI's Fourth Amended Plan find that the Reorganized TERI will maintain its nonprofit status.[28]

iv.     The same Order found that TERI "complied with all applicable state and federal restrictions on transfers by not for profit entities."[29]

l.     While Plaintiff broadly disputes TERI's non-profit status, on summary judgment it fails to advance any evidence that would allow a trier of fact to reach a contrary conclusion.[30]

---

[27] See FFCL, Co. 83, p. 6, & Doc. 66, Ex. M.
[28] See FFCL, Co. 83, p. 6 - 7, & ECF 66, Ex. N.
[29] *Id.*
[30] See FFCL, Doc. 83, p. 7, ¶ 1

# ARGUMENT

## A.     THE BANKRUPTCY COURT'S FINDINGS AND DECISION ARE SOUND AND SHOULD BE AFFIRMED

The bankruptcy court's decision is a simple one. Medina's education loan is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(8)(A)(i) because it was made as part of a loan program that was guaranteed by TERI. TERI's guaranty constitutes the required funding, in whole or in part, under Section 523(a)(8)(A)(i). TERI was a non-profit, which satisfies the requirement that the loan program be funded by a non-profit. Accordingly, the bankruptcy court found that Medina's education loan was non-dischargeable. The bankruptcy court's decision is correct on all three of these points.

## 1.     The Bankruptcy Court's Decision that TERI's Guaranty is Funding is Supported by a Canon of Case Law

There is an extensive canon of case law finding a nonprofit's guaranty of a loan program is funding under the §523(a)(*)(A)(i). Many of these cases specifically find TERI's Guaranty to be funding under the Statute. As one of the earlier cases sets forth:

> As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play. For example, the *Klein* court found that even though the Bankruptcy Code does not define "funded," and that the term is not synonymous with the term "guaranteed," the plain language of the statute

dictated construing the statute's funding programs language "to include guarantees like those at issue herein." *Klein*, slip op. at 13. The *Klein* court found further support in its conclusion in the legislative history of the statute. See id. At 13-14. See also *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) (examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government or nonprofits under the "any program funded in whole or in part" language.) (Referring to *Klein v. The Education Resources Institute, Inc. (In re Klein)*, Ch. 11 Case No. 92-B44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997).[31]

The courts look to the plain language of the Statute to find that the word "fund" easily encompasses a guaranty of a loan program, especially when that guaranty is one of the reasons that the loan program existed in the first place.

The Second Circuit in *O'Brien* expressly held that TERI's Guaranty is funding under the Statute.[32] In affirming the decisions of the bankruptcy court and the district court, the *O'Brien* court found that TERI as a guarantor had "funded" a loan program within the meaning of § 523(a)(8)(A)(i). "[W]e hold that § 523(a)(8) includes within its meaning loans made pursuant to loan programs that are guaranteed by non-profit institutions"[33] The Second Circuit

---

[31] *In re Taratuska*, No. 01-10361-RS, 2007 WL 2385955 (Bankr. D Mass. Aug. 16, 2007), opinion revised and superseded, 374 B.R. 24 (Bankr. D. Mass. 2007), rev'd, No. CIV.A. 07-11938-RCL, 2008 WL 4826279 (D. Mass. Aug. 25, 2008)
[32] *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104 (2d Cir. N.Y. 2005)
[33] *Id.*, at 106

NCSLT/Appellee Responding Brief 2/1/2021   Case No. 20-CV-1912-BEN-MDD

saw that by guaranteeing a loan program, TERI was devoting some of its financial resources to support that program.[34]

The Second Circuit's reasoning is entirely consistent with the Sixth Circuit's reasoning in *Merchant*.[35] The Sixth Circuit found loans made by commercial lenders and guaranteed by private nonprofit institutions are non-dischargeable because they are made under a program funded in part by the nonprofit institutions. Other courts – including the Ninth Circuit Bankruptcy Appellate Panel – followed *Merchant* and found that where nonprofit entities supported commercial student loan programs, the resulting loans were nondischargeable under §523(a)(8)(A)(i).[36]

The reasoning set forth in *O'Brien* and *Merchant* remains the predominate view on the issue. And, it has been applied to the very loan program and creditor present here. In *Greer-Allen*,[37] the plaintiff had three loans made under the Education One Loan Program; the same program Medina's loan was made under.

---

[34] *Id.*

[35] *In re Merchant*, 958 F.2d 738 (6th Cir. 1992)

[36] See *Hemar Serv. Corp. of Am. Inc. v. Pilcher (In re Pilcher)*, 149 B.R. 595, 600 (B.A.P. 9th Cir. 1993); *In re Merchant*, 958 F.2d 738, 740 (6th Cir. 1992); *Decker v. EduCap, Inc.*, 476 B.R. 463, 467-468 (W.D. Pa. 2012); *In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); *In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D. Cal. 1989)

[37] *In re Greer-Allen*, 602 B.R. 831, at 838 (Bankr. D. Mass. 2019)

One of the loans was held by the NCSLT 2006-3 Trust; the same trust that holds Medina's loan.  The court found that the loans were educational loans, TERI was a nonprofit organization, the loans were made under Bank One and JPMorgan's Educational One Loan Program, and TERI's blanket guaranty to pay the loans upon default was funding of the Loan Program as contemplated by §523(a)(8)(A)(i).[38]  To state it as plainly as possible: TERI's Guaranty of loans made under the same program as Medina's Loan held in the same trust as Medina's Loan has already been determined to constitute funding under §523(a)(8)(A)(i), rendering those loans non-dischargeable.

TERI-guaranteed loans in other NCSLT trusts have also been found to be non-dischargeable.

In *Mata*, the Central District of California Bankruptcy Court found that TERI's Guaranty of programs which issued loans held in three National Collegiate Student Loan Trusts to be funding under the Statute.[39]

In *Cleveland*,[40] the Northern District of Georgia Bankruptcy Court held "The NCSLT loans were made under a program funded in whole or in part by a non-profit institution, in this case, The Education Research Institute, Inc.

---

[38] *Id*

[39] *In re Mata*, No. 6:13-BK-30625-MH, 2020 WL 5543716, at *8 (Bankr. C.D. Cal. July 31, 2020)

[40] *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016)

Consequently, all of the loans of ECMC and NCSLT qualify to be non-dischargeable under Section 523(a)(8)(A)(i)."[41]

TERI's guaranty qualifies as funding because:

> Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty helps fund a program because it encourages a lender to extend credit that may not be otherwise available.[42]

TERI's Guaranty of an educational loan program committed TERI's financial resources to the program and allowed the loan program to issue loans. That commitment of financial resources- satisfies the "funded" requirement of the Statute.[43] Because the funding of the loans at issue was conditioned upon TERI's Guaranty of the- program which issued the loan, "TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8).").[44]

In the present instance, there is no dispute that The Education One Loan Program (Medina's Program) would not exist but for TERI's funding of the Guaranty. Bank One conditioned its participation in the Program in part on TERI's Guaranty:

---

[41] *Id.*, at 271
[42] *In re Duits*, No. 14-05277-RLM-13, 2020 WL 256770, at *2 (Bankr. S.D. Ind. Jan. 15, 2020) (Cite omitted)
[43] *In re Holguin*, 609 B.R. 878, 887 (Bankr. D.N.M. 2019)
[44] *In re McClain*, 272 B.R. 42, 46 (Bankr. D.N.H. 2002)

15

WHEREAS, TERI is in the business of providing financial assistance in the form of loan guaranties to and on behalf of students enrolled in programs of higher education and their parents at TERI-approved schools; and

WHEREAS, Bank One is willing to make Loans to eligible Borrowers under the Program, and TERI is willing to guaranty the payment of principal and interest against the Borrowers' default or certain other events as more fully described below, in accordance with the terms and conditions set forth in this Agreement.[45]

Bank One's willingness to make loans under the Program is conditioned on TERI's willingness to guaranty the Loans - its funding of the Guaranty – funded the Loan Program because it enabled the program.

"[T]he Court does not need to put a fine point on the directness of the funding or the degree of involvement required of a nonprofit institution to determine whether a loan qualifies as one "made under a program funded . . . by a nonprofit institution."[46] As numerous courts have held, there can be no question that this is in fact funding of the Loan Program.

Moreover, it should not be lost on this Court that Medina admits that as part of its bankruptcy, "TERI paid out amounts in excess of the anticipated default rates of outstanding loans to the lenders and owners of the loans."[47] In other words, TERI paid out its own funds to satisfy its Guaranties to the

---

[45] See TERI Guaranty, Doc. 64-6, Ex. E, P. 1

[46] *Sears v. EduCap, Inc. (In re Sears)*, 393 B.R. 678, 681 (Bankr. W.D. Mo. 2008)

[47] Appellant's Opening Brief p. 11.

various programs. It funded "in part" – which is all that Section 523(a)(8)(A)(i) requires – the loan programs it guarantied_even under Medina's overly restrictive view of the word "fund."

All of the above-cited cases, without exception, found that the plain language of the Statute compelled them to find a nonprofit's guaranty of a loan program is funding under §523(a)(8)(A)(i). The bankruptcy court's reliance on this canon of case law and the plain language of the Statute to find that TERI's Guaranty of Medina's Loan Program constituted funding of the Program is sound and should be affirmed.

## 2. The Bankruptcy Court Correctly Found that TERI was a Nonprofit Institution

TERI was a nonprofit corporation under Massachusetts law and there is ample supportive evidence in the record.[48] The bankruptcy court found "TERI is a non-profit institution"[49] and based this finding on numerous documents farmed from the Secretary of the Commonwealth of Massachusetts's website, TERI's

---

[48] See Nolan Affidavit, Doc. 64 and its exhibits and see TERI's Articles of Incorporation, Doc. 64-15.
[49] See FFCL, Doc. 83, ¶ 9, 9.a – 9.l, and STATEMENT OF FACTS, ¶9, 9.a – 9.l *infra*

bankruptcy filings and the observations of a Declarant who reviewed the site.[50] Absent clear error, this Court must defer to the bankruptcy court's finding.[51]

TERI is consistently referred to as a nonprofit in the Loan documents and documents relating to the Loan Program and securitization of the loans. The Guaranty between TERI and Bank One refers to TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws."[52] The Loan documents, The Trust Agreement, and the Deposit and Security Agreement describe it as a nonprofit institution.[53]

Tellingly, with the light shining on TERI's finances during its bankruptcy, no creditor appears to have challenged TERI's nonprofit status in its bankruptcy, alleged its funds were inappropriately distributed, or sought to claw back any funds from the shareholders and directors.

Again, there is ample case law finding TERI is a nonprofit. *O'Brien* found "[t]he loan was guaranteed by defendant-appellee creditor The Education Resources Institute ("TERI"), a not-for-profit corporation that conditionally guarantees loans extended by private lenders under TERI's student loan

---

[50] *Id.*

[51] *Vill. at Lakeridge, LLC*, 138 S. Ct. at 966, *and see In re Winick*, 610 B.R. at 657

[52] See Exhibit E, p.1, ¶ 1

[53] Exhibit B, ¶ L. 12; Exhibit H p. 5, ¶ 1; Exhibit I, p. 1, ¶ 1

programs."[54]    *Hammarstrom* found "…TERI [is a] private nonprofit organization… engaged in providing guaranteed educational loans."[55]  *Rodriguez* found "TERI is a private nonprofit institution organized under the laws of Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States."[56].  "[T]he Guaranty Agreement between TERI and The Bank of New England (attached as Exhibit B to the Plaintiff's Brief in Support of its Motion for Summary Judgment) indicates that TERI is in  fact a non-profit corporation."[57]  *Martin* found ("TERI [is a] private nonprofit organization ... engaged in providing guaranteed educational loans."[58]

There is no evidence that TERI was anything but a nonprofit institution from the beginning to the end of its corporate life and there is no case finding it was not. Medina certainly does not put forth anything to demonstrate that there is a reasonable dispute about TERI's non-profit status. The bankruptcy court's finding that TERI is a nonprofit must be affirmed.

---

[54] See *O'Brien*, 419 F.3d at 105
[55] See *In re Hammarstrom*, 95 B.R. at 166
[56] See *Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez)*, 319 B.R. 894, 895 (Bankr. M.D. Fla. 2005)
[57] *In re Martin*, 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990)
[58] *In re Hammarstrom*, 95 B.R. at 166

### 3. The Bankruptcy Court's Finding that Medina's Loan is Nondischargeable Under §523(a)(8)(A)(i) is Correct and Should be Affirmed

The bankruptcy court's unassailable findings of facts that TERI's Guaranty funded Medina's Education One Continuing Education Loan Program and that TERI is a nonprofit institution leads to the logical conclusion that Medina's Loan is nondischargeable under §523(a)(8)(A)(i). The plain wording of the Statute renders an educational loan nondischargeable if it was "made under any program funded in whole or in part by a nonprofit institution."[59] Inserting the findings into the Statute, it reads as follows: Medina's educational loan is nondischargeable because it was made under the Education One Continuing Education Loan Program, which was funded in whole or in part by the Guaranty of TERI, a nonprofit institution. The bankruptcy court's findings can lead to no other conclusion of law and must be affirmed.

### B. MEDINA CANNOT AND DOES NOT POINT TO ANY ERROR AND INSTEAD ATTEMPTS TO MISLEAD THE COURT

In response to the bankruptcy court's decision, Medina does not point to an error that the court made. Instead she makes a series of arguments that vary from

---

[59] 523(a)(8)(A)(i)

being out rightly untrue or misleading, or that are based on irrelevant and inapplicable law. She ignores the plain meaning of the statute and urges the Court, without substantial argument, to overturn the canon of case law finding TERI's Guaranty constitutes funding, in whole or in part, of educational loan programs.

### 1. Medina's Application of Case Law is Flawed

Medina cites to no cases finding a nonprofit's guaranty of a loan program is not funding under the Statute. However, she argues that the law holding that a nonprofit's guaranty of a loan program is sufficient under Section 523(a)(8)(A)(i) to render a loan non-dischargeable should be overturned because in retrospect, for-profit student loan lenders were actually predatory lenders, and the public policy concerns behind the Statute are not applicable today. She cites to no evidence in the record to support these conclusions.

Instead, she argues that because evolving case law has found that Section of §523(a)(8)(A)(ii)[60] does not apply to "private student loans," Section 523(a)(8)(A)(i) – an entirely different provision – should not apply to those loans, and then reasons that the bankruptcy court should be reversed. She cites no case law which support this idea and does not explain how this would affect the robust line of case law cited above.

_____

[60] 11 U.S.C. § 523(A)(8)(A)(ii)

Medina then points to a new OCC regulation and asks the Court to read its definition of the word "fund" into Section 523(a)(8)(A)(i).[61] However, the OCC is not putting forth a new meaning of the word "fund" for purposes of the Statute, but is giving guidance on what it means in the context of its new- "final rule to determine when a national bank or Federal savings association (bank) makes a loan and is the "true lender," including in the context of a partnership between a bank and a third party, such as a marketplace lender. Under this rule, a bank makes a loan if, as of the date of origination, it is named as the lender in the loan agreement or funds the loan."[62] The OCC's regulation has to do with "valid when made" doctrine in the context of rent-a-charter concerns and has to do with when a bank makes a loan.[63] This regulation has absolutely no application to the definition of funding under the Statute.

In a stunning misdirection using the OCC regulation, Medina claims that the District Court for the District of Colorado "recently reversed on appeal a

---

[61] The full and accurate cite is: "These commenters are correct that the funding prong of the proposal generally does not include these types of arrangements: They do not involve a bank funding a loan at the time of origination. For example, when a bank purchases a RIC from an auto dealer, as is often the case with indirect auto lending, the bank does not "fund" the loan. When a bank provides a warehouse loan to a third party that subsequently draws on that warehouse loan to lend to other borrowers, the bank is not funding the loans to these other borrowers." *National Banks and Federal Savings Associations as Lenders*, 85 FR 68742-0; and See Appellant's Opening Brief, p. 31

[62] *Id.*

[63] *Id.*

decision of the bankruptcy court that had similarly sided with the Second Circuit, citing a recent OCC ruling as support."[64]   Presumably, this is a reference to the Second Circuit's *O'Brien* decision, *infra*, and the inference is that the district court overturned O'Brien's construction of the word "funding" using the new OCC rule.  Not only does the case not mention the OCC rule on funding (in fact, the word "funding" only appears in case cites to *Madden v. Midland Funding,*) it was decided under the Depository Institutions Deregulation and Monetary Control Act of 1980.  It has absolutely no relevance whatsoever to this case.

Medina urges the court to overturn all cases finding that a nonprofit's guaranty of a loan program constitutes funding under the Statute on the grounds of public policy, evolving case law on another statute and an inapplicable OCC Regulation, but she does not offer any analysis to counter the reasoning in the substantial canon of case law finding that TERI's Guaranty is funding under the Statute.

**2.  Medina's Account of The Legislative History of §523(A)(8)(A)(I) is Flawed**

---

[64] *In re Rent-Rite SuperKegs W. Ltd.*, No. 19-CV-01552-RBJ, 2020 WL 6689166, at *4 (D. Colo. Aug. 12, 2020)

Medina next seeks to use the legislative history of Section 523(a)(8)(A)(i) to vary the plain language of the Statute. There is no basis to do this.

The Ninth Circuit's mandate on statutory construction states that if the language of a statute is clear, a court need not look past the wording:

> Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." Particular phrases must be interpreted in light of the purpose and structure of the entire statutory scheme. The plain meaning of a statute controls if it does not lead to absurd or impracticable consequences.[65]

The United States Supreme Court states it succinctly. "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."[66]   If the "statute's language is plain, "the sole function of the courts is to enforce it according to its terms."[67]

*O'Brien* relied on the plain language of the statute to find that TERI's Guaranty was enough to fund the loan program.  "In our view, the plain language

---

[65] *United States v. Mann*, 130 F.3d 1365, 1367 (9th Cir.), opinion withdrawn, 138 F.3d 758 (9th Cir. 1997) (Cites omitted)

[66] *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S. Ct. 2589, 2594 (1992)

[67] *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989), Citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)

of the statute, its structure, and the efforts of other courts in applying it to similar circumstances compel an affirmance here."[68] The bankruptcy court did the same and looked to *O'Brien* and other case law to find that TERI's Guaranty funded Medina's Loan Program.[69]

Nevertheless, Medina ignores the plain wording of the Statute and propounds a slanted legislative history to try to convince the Court that the Statute does not say what it says. She is asking this Court to write back into the Statute wording that Congress deleted. Until the 1984 amendment to 11 U.S.C. §5023(a)(8)(a)(i), only loans made "under any program funded in whole or in part by… a nonprofit institution *of higher education* were nondischargeable. (*Emphasis* added.) Congress amended the statute in 1984 to delete the words "of higher education" so that programs funded in whole or in part by *any* nonprofit institution were rendered nondischargeable. Medina calls this a "minor change,"[70] but it greatly expanded the types of loans rendered nondischargeable under the statute by no longer requiring that nonprofit be an institution of higher education. Medina argues that what Congress really meant was to keep the modifier "of higher education."

---

[68] *In re O'Brien*, 419 F.3d at 107
[69] See FFCL, Doc. 83 p. 7
[70] Appellant's Opening Brief, p. 18

The quality of Medina's argument is laid bare by this single fact: she is asking the court to read back into the Statute the very language Congress took out. Courts have already refused to do this. Specifically, when one court was asked to rule on this, it stated:

> Most significantly, prior to 1984, section 523(a)(8) barred the discharge, inter alia, of certain loans made under any program funded in whole or in part by a governmental unit or "nonprofit institution of higher education." The Bankruptcy Amendments and Federal Judgeship Act of 1984, however, deleted the term "of higher education." The debtor would basically have me read the term back into section 523(a)(8) by imposing a post-secondary or higher education requirement. The language of the statute is not so limited.[71]

Medina is engaged in a wishful analysis, that Congress did not really mean for "institution" to mean *any* institution and that it still really meant "educational institution" even though it excised those very words. The Statute says "a nonprofit institution," which means *any* "nonprofit institution." Courts may not add words to statutes. "Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort."[72] This Court should decline to add back into the statute what Congress has deleted.

---

[71] *Plumbers Joint Apprenticeship & Journeyman Training Comm. v. Rosen (In re Rosen)*, 179 B.R. 935, at 938 (Bankr. D. Or. 1995); See also recent case *In re Greer-Allen*, 602 B.R. 831, at 838 (Bankr. D. Mass. 2019)

[72] *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596, 71 S. Ct. 515, 518, 95 L. Ed. 566 (1951); *See also Resident Councils of Washington v. Leavitt*, 500 F.3d 1025, 1031 (9th Cir. 2007)

There is no reason to go beyond the plan wording of §523(a)(8(A)(i). Any nonprofit institution fits within the parameter of the Statute. TERI, a nonprofit corporation, is included within the Statute's definition of "nonprofit institution.

### 3. Medina's Definition of the Word "Fund" is Flawed

Medina next argues that the bankruptcy court improperly construed the Statute because it did not narrowly construe the word "fund." She provides definitions of the word, but one does not exist where she says it does and the other is flawed.

She appears to argue that the word "fund" only applies to transactions with money and that because TERI's Guaranty did not provide money at the inception of the Guaranty Agreement, the Guaranty cannot be considered funding. Her Brief states that Merriam-Webster defines "fund" as "to furnish (as an institution) with a "regular source of income"[73] This definition does not exist in the online dictionary. The definition is in quotation marks in the Brief, suggesting the dictionary is being quoted verbatim, and so is misleading, at the least.

---

[73] Appellant's Opening Brief, pgs. 25-26

The second definition of fund attributed to the dictionary is "to provide money for."[74] Again, this is set in quotes, suggesting this also is verbatim. Again, it is not. A full and true copy of Merriam-Webster's definition of "fund"[75] is:

> *transitive verb*
> **1a:** to make provision of resources for discharging the interest or principal of
>
> **b:** to provide funds for
> // a federally *funded* program
>
> **2:** to place in a fund : ACCUMULATE
> **3:** to convert into a debt that is payable either at a distant date or at no definite date and that bears a fixed interest
> // *fund* a floating debt

One of Merriam-Webster's definitions of "fund" is "to provide funds for," not "provide money for," as Medina tells us. When the actual definition "to provide funds for" is used, TERI's guaranty is funding. It paid funds to holders of program loans when those loans defaulted.[76]

TERI set aside funds for payment of claims under its Guaranty. Under the Deposit and Security Agreement, a Pledged Account was established in the name

---

[74] *Id.*, at 26

[75] https://www.merriam-webster.com/dictionary/fund (Last visited January 19, 2021)

[76] See FFCL, Doc. 83, p. 4, ¶8.

NCSLT/Appellee Responding Brief 2/1/2021    Case No. 20-CV-1912-BEN-MDD

of TERI and was funded in part by Guaranty Fees.[77]. Once a Program loan defaulted and NCSLT submitted a valid claim, the Pledged Account trustee would transfer funds from the Pledged Account to a Collection Account to pay on the Guaranty.[78] Clearly, TERI set aside assets to pay on Guaranty Claims and so funded the loan program through its Guaranty. Under the plain words of the Statute, TERI's Guaranty funded the Program.

Furthermore, narrowly construing a statute does not mean ignoring its purpose. In *Hammerstrom*, the court found that a nonprofit's participation in a loan program constituted funding under the Statute, and so rendered a loan nondischargeable. It also found that its holding did not violate the general proposition that exceptions to discharge are to be construed narrowly:

> While it is true that section 523(a)(8) runs counter to the general "fresh start" philosophy of the Bankruptcy Code, the same could be said of any exception to discharge. The exceptions to discharge exist because Congress felt that other public policies outweighed the debtor's need for a fresh start. Although exceptions to discharge are to be construed narrowly, that approach to construction is not a suitable basis for a court to override the plain language of the statute creating the exception.[79]

Medina cites to two cases which give definitions of the word "fund," but they are inapplicable here because they do not define the word in the context of

---

[77] See Deposit and Security Agreement, Luke Declaration, Doc. 64-1, Exhibit I, Sec. 2, p.4
[78] *Id.*, Sec. 3(a), p. 4
[79] *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989), citing *Matter of Barth*, 86 B.R. 146, 149 (Bankr. W.D. Wis. 1988)

the Statute. The *Stewart*[80] court defined it in the context of a §523(a)(2) fraud case and the *Grojean*[81] case, while distinguishing "fund" from "guaranty," defined it the context of the tax code for Subchapter S corporations. The court should disregard these definitions of the word as inapplicable to the Statute.

Ultimately, even if Medina were right in her arguments surrounding the word "fund," as stated above Medina admits that as part of its bankruptcy, "TERI paid out amounts in excess of the anticipated default rates of outstanding loans to the lenders and owners of the loans."[82] TERI paid out its own funds to satisfy its Guaranties to the various programs.

### 4.    Medina's Construction of the Statute is Flawed

*a.    "Fund" Includes "Guaranty"*

Medina argues that because the word "guaranteed" is used in the first segment of the statute, it is precluded from the second by omission. Not so, under the Bankruptcy Code's rules of construction.

> The Court begins by noting that the rules of construction provided for the bankruptcy code at 11 U.S.C. § 102 states that "or" is not exclusive. As such, the Court will not assume, as Plaintiff argues, that the separation through "or" between the provision in § 523(a)(8)(A)(i) concerning the

---

[80] *In re Stewart*, 592 B.R. 414 (B.A.P. 1st Cir. 2018), *vacated and remanded*, 948 F.3d 509 (1st Cir. 2020)
[81] *Grojean v. Comm'r,* 248 F.3d 572 (7th Cir. 2001)
[82] Appellant's Opening Brief p. 11.

guaranteeing of the loan by a government unit and the provision concerning the funding of a loan program by a governmental unit or nonprofit was meant by Congress to exclusively limit the right of exception from discharge through guarantees to student loans issued by governmental units."[83]

"Funded" includes "guaranteed" under the Bankruptcy Code's rules of construction.

Medina cites to *Diwre*,[84] but it is unhelpful and irrelevant because it concerns an appeal to revoke probation for student loan fraud. In a stretch to distinguish "fund" from "guaranty," she cites to a footnote in a Report and Order on an amendment to the Telephone Consumer Protection Act in the Bipartisan Budget Act of 2015,[85] which is a comment on the definition of the phrase "owed to or guaranteed by the United States" as it pertains to the TCPA. Any meaning it has in that context has no meaning here.

The Second Circuit's view is correct. By guaranteeing a loan program, TERI was providing its financial resources to support that program.[86]

*b.* *The Statute and Law Look to the Loan at the Time it was* Made *to Determine the Intent of the Parties*

---

[83] *In re Mata*, 2020 WL 5543716, at *6
[84] *United States v. Diwre*, 872 F.2d 431 (9th Cir. 1989) The cite is in violation of CTA9 Rule 36-3, which prohibits citations to unpublished opinions of the 9th Circuit issued before January 1, 2007
[85] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074, 9082, n.54 (2016)
[86] *Id.*

Medina argues that at the time she filed her petition, TERI's guaranties were "rejected" in its bankruptcy, and so at the time she filed, her Loan was not guaranteed by TERI.[87]

The Statute looks to the time a loan is made to determine whether it is "an educational … loan ... *made* under any program funded in whole or in part by a … nonprofit institution."[88] (*Emphasis* added.) The tense is past, not prospective. *At the time* Medina entered into her Loan, TERI guaranteed Medina's Loan Program.[89] TERI's later bankruptcy had no effect on whether TERI guaranteed the Program at the time of the Loan formation.

This follows basic rules of contract interpretation. A court must look at the intent of the parties at the time a contract was made. "The Court's fundamental purpose in interpreting the terms of the contract is to give effect to the intent of the parties as it existed at the time the agreement was made."[90] "The interpretation takes into account the circumstances when the contract was

---

[87] Appellant's Opening Brief, p. 39
[88] §523(a)(8)(A)(i)
[89] See FFCL, Doc. 83, ¶ 7, and STATEMENT OF FACTS, ¶7, *infra*
[90] *Midwest Mobile Diagnostic Imaging, L.L.C. v. Dynamics Corp. of Am.*, 965 F. Supp. 1003, 1013 (W.D. Mich. 1997), *aff'd sub nom. Midwest Mobile Diagnostic Imaging v. Dynamics Corp. of Am.*, 165 F.3d 27 (6th Cir. 1998)

32

NCSLT/Appellee Responding Brief 2/1/2021    Case No. 20-CV-1912-BEN-MDD

made."[91]   The intent of the parties to Medina's Loan at the time it was made was that her Loan Program would be guaranteed by TERI.

Medina claims that the Court should look to whether or not TERI's Guaranty existed at the time she filed bankruptcy and determine if the Program was guaranteed at that time.  In support, she cites to the *Abdelgadir*[92] case, which concerned lien stripping under 11 U.S.C §1125(b)(5) and  held that "the determinative date for whether a claim is secured by a debtor's principal residence is, like all claims, fixed at the petition date."[93]   It also held that the amount of the creditor's claim was determined as of the date of the petition.[94]   It did not give voice to if or how the terms of the underlying note and mortgage were somehow changed on the petition date, and is wholly inapplicable to a student loan under §523(a)(8).[95]  The filing of a petition in bankruptcy did not somehow magically change the nature of Medina's Loan at the time it was made. Under Medina's reasoning, all contract interpretation would be subject to

---

[91] 11 Williston on Contracts § 32:7 (4th ed.)
[92] *In re Abdelgadir*, 455 B.R. 896 (B.A.P. 9th Cir. 2011)
[93] *Id.,* at 903
[94] *Id.,* at 901
[95] Medina cites to three other cases, but they have no relevance to the Statute or contract interpretation.  See *In re Tremblay,* No. BR 11-09732-MMB, 2012 WL 2915367 (Bankr. S.D. Cal. July 16, 2012) and *Guillermety v. Sec'y of Educ. of U.S.*, 241 F. Supp. 2d 727 (E.D. Mich. 2002)
[95] *Giannullo v. City of New York*, 322 F.3d 139, 143, n. 5 (2d Cir. 2003)

33

unanticipated future events, and counter to the basic rules of contract interpretation.

The Court must look to the time when the Loan was made to determine whether it was "*made* under any program funded in whole or in part by a … nonprofit institution."[96] At the Loan's inception, TERI guaranteed Medina's Program, the Education One© Education One Continuing Education Loan Program.[97]

Medina's reliance on the OCC opinion discussed above is curious in the context of this argument. That opinion looks to when the loan was made to determine the characteristics of the loan. It does exactly what Medina argues should not be done here.

c.    *The Statute Does Not Require a Forensic Examination of Nonprofits to Determine if they are Nonprofits Under the Statute*

Medina argues that courts are required to do an in-depth examination of every nonprofit organization under §523(a)(8)(A)(i). This would force every action under this section into a referendum on the nonprofit in question, instead of focusing on the purpose of the Statute, which is the question of

---

[96] §523(a)(8)(A)(i)

[97] See FFCL, Doc. 83, p. 4, ¶7.  See also Luke Declaration, 64-1, ¶ 23 and See also TERI Guaranty, Doc. 64-6, Ex. E, Pgs. 1 - 3, Preamble & Sections 1.6 & 2.1; E, Ex. A, Sections, 1, 2, and "Basic Program Design;" See also Credit Agreement, Doc. 64-3, Ex. B, p. 3, upper left-hand corner & ¶ L.12.

nondischargeability. Under the plain language of the statute, if the entity is shown to be a nonprofit, it is sufficient to satisfy the nonprofit element. The *Zimmerman*[98] case is cited in support, but is not helpful in a §523(a)(8)(A)(i) context. In that case, consumers filed a class action against a credit counseling provider alleging violations of the Credit Repair Organizations Act (CROA). They alleged that the owners and operators "never intended to operate Cambridge as a nonprofit, but rather intended to use it to enrich themselves and their key executives by permitting them to siphon off corporate assets of their business through huge compensation packages."[99] Because the CROA requires credit repair organizations to be both nonprofit and tax-exempt and because the complaint alleged the organization was not operating as a nonprofit, the court found it appropriate to investigate the organization's nonprofit status. *Zimmerman* is not analogous to this case.

Medina seems to argue that federal courts may not "simply accept a state's classification because issues of nondischargeability are governed by federal law"[100] possibly arguing that this Court should not rely on the evidence that TERI

---

[98] *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005)
[99] *Id.*, at 479
[100] Opening Brief of Appellant, p. 49.

is a nonprofit under Massachusetts law. If so, this is nonsense. The *Grogan*,[101] case cited to in support does not support this argument.

TERI was a nonprofit under the General Laws of Massachusetts and is a nonprofit under the Statute. No further inquiry is needed.

### 5.   Medina Points to No Evidence that TERI Was Not Operating as a Nonprofit

Medina alleges that TERI engaged in "suspect transactions" with First Marblehead Corporation ("FMC). The "suspect transactions" are a sale of a portion of TERI's assets to FMC, the partnership between TERI and FMC contributed to FMC's profitability, and processing fees from TERI to FMC consisted of a percentage of FMC's revenue. None of this is illegal, unusual or untoward. This is not evidence that TERI was not operating as a nonprofit and certainly does not warrant overturning the bankruptcy court's finding that TERI is a nonprofit institution. Medina points to no evidence that creates a triable issue of fact on TERI's nonprofit status.

### 6.   Medina's Statement of The Burden of Proof is Flawed

Medina asserts that "it is the Trust's burden to prove Medina's Loan is non-dischargeable."[102] This suggests that the creditor in student loan discharge cases must file an adversary to have its loan declared nondischargeable. In fact,

---

[101] *Grogan v. Garner*, 498 U.S. at 290–91
[102] Appellant's Opening Brief, p, 37

§523(a)(8) is intended to be self-executing and absent an adversary by the debtor seeking a discharge, §523(a)(8) loans are presumed to be nondischargeable. "Section 523(a)(8) is "self-executing." Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt."[103]

Rather, the creditor has a lower burden of proof. "Under § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters."[104]

Medina mistakenly relies on a recently decided Sixth Circuit case that found that "In any § 523(a) analysis, "[t]he creditor ... bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge."[105] That court relied on a case decided under §523(a)(1)(C), not § 523(a)(8), which concerned a willful evasion of taxes and found the IRS bore the burden of proving the debt was excepted from discharge.[106] The Sixth Circuit court in making its finding, relied on a Supreme Court case decided under

---

[103] *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (U.S. 2004) (Cites omitted).
[104] *In re Roth*, 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013)
[105] *In re Conti*, 982 F.3d 445, 448 (6th Cir. 2020)
[106] *In re Meyers*, 196 F.3d 622, 624 (6th Cir. 1999)

§523(a)(2).[107] Because neither court had a student loan discharge before it, neither addressed the self-executing nature of §523(a)(8). Medina also cites to a case that repeats a creditor has the burden of proving a debt nondischargeable in general under §523(a), but also repeats *Roth's* limitation that "the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters."[108] NCSLT need only prove that its Loan, in this case, falls within the parameter of § 523(a)(8)(A)(i), which it has.

### 7. Red Herrings

Medina claims the *Greer-Allen* bankruptcy court "misleadingly quoted the… Guaranty to imply that it is unconditional"[109] and that the lower court relied on this characterization in it tentative ruling.[110] First, the Guaranty in *Greer-Allen* is the same as Guaranty in this case (One of the defendants in that case is the same as Appellee - NCSLT 2006-3.)[111] The *Greer-Allen* court quoted the

---

[107] *Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991)

[108] *In re McDaniel*, 973 F.3d 1083, 1092 (10th Cir. 2020)

[109] See Appellant's Opening Brief, p. 43 and *In re Greer-Allen*, 602 B.R. at 839

[110] See Doc. 74, p.4

[111] One Guaranty Agreement was filed under seal in *re Greer-Allen* for Defendants National Collegiate Student Loan Trust 2005-1, 2005-3 & 2006-3. See *Greer-Allen v. National Collegiate Student Loan Trust 2006-3, et.al*, Bankr. Ct. D. Mass., Case No. 17-01129, Doc. 53

Guaranty verbatim,[112] so the quote can hardly be characterized as misleading. Second, the lower court cited to that quote in the context of deciding "whether a program is "funded" by an institution that only guaranties the loans."[113] Third, the lower court's decision did not consider whether the Guaranty was conditional or not in making its Tentative Ruling on the issue.[114] Fourth, nothing in the Statute requires funding to be unconditional.

There is no evidence in the record below that the conditions of the Guaranty were not met, and even if not met, Medina fails to explain how this would affect TERI's Guaranty of her Loan Program.

Medina makes much of the lack of proof that TERI was a tax-exempt 501(c) corporation. This is a red herring. The Statute only requires an institution be a nonprofit institution. It does not require it be tax exempt. While most nonprofit organizations may be tax exempt, the two may exist without the other. "There is no necessary correlation between tax exempt status and nonprofit status. As just one example, a religious organization which expends a substantial part of its activities in intervening in political campaigns is still not organized for profit even though it is barred from tax exempt status by 26 U.S.C. §

---

[112] See TERI Guaranty, Doc. 64-6, Ex. E, Section 2.1
[113] See Tentative Ruling, Doc. 74, pgs. 3-5
[114] *Id.*

501(c)(3)."[115]  TERI need only be a nonprofit institution, which it clearly was, and does not need tax exempt status to qualify as a nonprofit institution under §523(a)(8).

## C.    PARTIES MAY NOT RAISE NEW ISSUES OF FACT ON APPEAL

Medina raises three new fact issues that were not raised in the bankruptcy court proceedings.  Medina claims NCSLT is not the owner of the student loan note.  The bankruptcy court's Findings of Fact found that "National Collegiate Student Loan Trust 2006-3, Defendant, is the current holder of the Loan."[116] Medina did not object to this in her Objection to NCSLT's Proposed Findings of Facts and Conclusions of Law,[117] and did not raise it in any of her pleadings in the bankruptcy court. Absent a showing of clear error, and there has been no such showing, this Court must defer to the bankruptcy court's findings[118] and find that

---

[115] *TI Fed. Credit Union v. Delbonis (In re Debonis)*, 183 B.R. 1, 3-4 (D. Mass. 1995), citing *In re Delbonis*, 169 Bankr. 1, at 3 (Bankr. D. Mass. 1994)

[116] See FFCL Doc. 83, ¶ 2, and STATEMENT OF FACTS, ¶2, *infra*

[117] See Notice of Lodgment of Order, Doc. 78; Exhibit A, Doc. 80; Amended Notice of Lodgment of Order with Exhibit A, Doc. 81 & Objection to Lodged Order, Doc. 82

[118] *Vill. at Lakeridge, LLC*, 138 S. Ct. at 966, *and see In re Winick*, 610 B.R. at 657

National Collegiate Student Loan Trust 2006-3, Defendant, is the current holder of the Loan.

The second new issue raised is the allegation that the form of the Loan does not conform to the Education One Continuing Education Loan Program loan forms. This was not raised in any of Medina's pleadings in the bankruptcy court.[119] The argument is expanded in the Brief to urge the Court to find that Medina's Loan was not made under any program because her Loan somehow does not conform to the Program requirements. While it was argued in the court below that the Loan was not made under a program, the argument was that "program" should be defined as a program under Title IV or similar state programs, not that the Loan documents were somehow defective.[120] In any event, one of the bankruptcy court's Findings of Fact was "The Loan was made under the Education One Continuing Education Loan Program (the "Program"), a part of the Education One© Loan Program."[121] Again, Medina did not object to this in her Objection to NCSLT's Proposed Findings of Facts and Conclusions of

---

[119] See Plaintiff's Complaint, Doc. 1; Plaintiff's Memorandum of Law In Opposition To Defendants' Motion for Summary Judgment, Doc. 29; Plaintiff's Sur-Reply, Doc. 42; Plaintiff's Memorandum, Doc. 47; Plaintiff's Amended Memorandum, Doc. 50; Plaintiff's Opposition to Motion for Summary Judgment, Doc 68.
[120] See Plaintiff's Opposition to Motion for Summary Judgment, Doc 68, p. 18
[121] See FFCL, Doc. 83, ¶ 6, and STATEMENT OF FACTS, ¶6, *infra*

Law,[122] and did not raise it in any of her pleadings below. Absent a showing of clear error, and there has not been one, this Court should defer to the lower court's finding[123] and find that Medina's Loan was made under Education One Continuing Education Loan Program.

The third new argument is that the evidence does not show that TERI paid on its Guaranty to Medina's loan program because TERI paid on an Education One© Education One Undergraduate Loan, while Medina's Loan was an Education One© Education One Continuing Education Loan. This was not raised in the court below.[124] If it had been, NCSLT would have replied to and explained the apparent, but nonexistent disparity.

This Court must decline to review each one of these issues because issues not raised in the trial court may not be raised on appeal. "We have consistently held that a party may not raise new issues on appeal after declining to present those facts before the trial court."[125]

## V. CONCLUSION AND RELIEF REQUESTED

---

[122] See Notice of Lodgment of Order, Doc. 78; Exhibit A, Doc. 80; Amended Notice of Lodgment of Order with Exhibit A, Doc. 81 & Objection to Lodged Order, Doc. 82

[123] *Vill. at Lakeridge, LLC*, 138 S. Ct. at 966, *and see In re Winick*, 610 B.R. at 657

[124] *Id.*

[125] *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)

42

For the reasons stated herein, National Collegiate Student Loan Trust 2006-3 respectfully requests that this Court affirm the decision of the bankruptcy court granting it summary judgment and finding that Appellant's student loan is nondischargeable under § 523(a)(8)(A)(i) because it was made under a loan program guaranteed by TERI, a non-profit institution.

Dated: February 1, 2021          Respectfully Submitted,

/s/ Monette W. Cope
MONETTE W. COPE (IL SBN ARDC #6198913)
Weltman Weinberg & Reis, Co., L.P.A.
180 N. Lasalle Street, Suite 2400
Chicago, IL 60601
Phone: 312-253-9614 Fax: 312-782-4201
Email: mcope@weltman.com
Pro Hac Vice Attorney for Defendant-Appellee
National Collegiate Student Loan Trust 2006-3

/s/ Holly J. Nolan
HOLLY J. NOLAN (CA SBN 140775)
Solomon Grindle Silverman and Spinella
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Phone: (858) 793-8500  Fax: (858) 793-8263
Email: hollyn@sgsslaw.com
Lead Attorney for Defendant-Appellee,
National Collegiate Student Loan Trust 2006-3

MONETTE W. COPE
(IL ARDC #6198913)
Weltman Weinberg & Reis, Co., L.P.A.
180 N. Lasalle Street, Suite 2400
Chicago, IL 60601
Phone: 312-253-9614 Fax: 312-782-4201
Email: mcope@weltman.com
Pro Hac Vice Attorney for Defendant-Appellee
National Collegiate Student Loan Trust 2006-3

HOLLY J. NOLAN (CA SBN 140775)
Solomon Grindle Silverman and Spinella
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Phone: 858-793-8500 Fax: 858-793-8263
Email: hollyn@sgsslaw.com
Lead Attorney for Defendant-Appellee,
National Collegiate Student Loan Trust 2006-3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (District or BAP)

In re:
Cesar Medina and Krystal Anne Medina,

_Debtors._

Krystal Anne Medina,

_Plaintiff-Appellant,_

v.

National Collegiate Student Loan Trust 2006-3,

_Defendant-Appellee._

Case No. 20-CV-1912-BEN-MDD

Judge Roger T. Benitez
Magistrate Judge Mitchell D. Dembin

Bankruptcy No. 17-BK-05276-LT
Adversary No. 19-AP-90065-LT

**CERTIFICATE OF COMPLIANCE with TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, and TYPE-STYLE REQUIREMENTS**

This form is in compliance with Part VIII of the Bankruptcy Rules for appellate documents and the broadened requirement for a certificate of compliance under Rule 8015(h), which requires certification of compliance with the type-volume or

word limits for briefs filed under Rule 8015(a)(7)(b), 8016(d)(2), or 8017(b)(4), and documents filed under Rule 8013(f)(3)(A), 8013(f)(3)(C), or 8022(b)(1).

1. This document complies with the ☐ type-volume limit of FRBP 8016(h) (insert Rule citation) or ☒ the word limit of FRBP 8015(a) (B) (insert Rule citation) because, excluding the parts of the document exempted by FRBP 8015(g) [and FRBP (insert Rule citation, if any) ]:

☒ this document contains <u>9,751</u> words, or

☐ this brief uses a monospaced typeface and contains lines of text.

2. This document complies with the typeface requirements of FRBP 8015(a)(5) and the type-style requirements of FRBP 8015(a)(6) because:

☒ This document has been prepared in a proportionally spaced typeface using <u>Times New Roman</u> <u>Microsoft Word 2016</u> in <u>14 Point</u> , or
(state name and version of word-processing program)   (state font size and name of type style)

☐ This brief has been prepared in monospaced typeface using with.
(state name and version of word-processing program) (state number of characters per inch and name of type style)

<u>/s/ Monette W. Cope</u>                    <u>Date: February 1, 2021</u>

<u>/s/ Holly J. Nolan</u>                    <u>Date: February 1, 2021</u>

Print name of person signing certificate of compliance:

<u>MONETTE W. COPE</u>

<u>HOLLY J. NOLAN</u>

MONETTE W. COPE
(IL ARDC #6198913)
Weltman Weinberg & Reis, Co., L.P.A.
180 N. Lasalle Street, Suite 2400
Chicago, IL 60601
Phone: 312-253-9614 Fax: 312-782-4201
Email: mcope@weltman.com
Pro Hac Vice Attorney for Defendant-Appellee
National Collegiate Student Loan Trust
2006-3

HOLLY J. NOLAN (CA SBN 140775)
Solomon Grindle Silverman and Spinella
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Phone: 858-793-8500 Fax: 858-793-8263
Email: hollyn@sgsslaw.com
Lead Attorney for Defendant-Appellee,
National Collegiate Student Loan Trust
2006-3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (District or BAP) | |
| In re: Cesar Medina and Krystal Anne Medina, *Debtors.* | Case No. 20-CV-1912-BEN-MDD Judge Roger T. Benitez Magistrate Judge Mitchell D. Dembin |
| Krystal Anne Medina, *Plaintiff-Appellant,* v. National Collegiate Student Loan Trust 2006-3, *Defendant-Appellee.* | Bankruptcy No. 17-BK-05276-LT Adversary No. 19-AP-90065-LT **CERTIFICATE OF SERVICE** |

I hereby certify that, on February 1, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Southern District of California by using the PACER (CM/ECF) system.

I further certify that parties of record to this appeal who either are registered PACER (CM/ECF) users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the PACER (CM/ECF) system.

Austin Connell Smith on behalf of Appellant Krystal Anne Medina; austin@acsmithlawgroup.com

Christopher R. Bush on behalf of Appellant Krystal Anne Medina; chris@chrisbushlaw.com

Dated: February 1, 2021          /s/ Jennie Adragna
                                 Jennie Adragna, Legal Assistant
                                 Weltman, Weinberg & Reis, Co., L.P.A.